AMERICAN CASUALTY COMPANY OF READING, PA., A CORPORATION, APPELLANT, *v.* HOTEL AND RESTAURANT EMPLOYEES AND BARTENDERS INTERNATIONAL UNION WELFARE FUND, JOHN CULLERTON, LEWIS R. COHEN, DONALD J. DePORTER, PATRICK KANE, DOMINIC LUONGO, A.W. MITCHELL, A.M. QUARLES, FREDERIC N. RICHMAN, WILLIAM SCHUMAN, EDWARD HANLEY, RONALD RICHARDSON, JOHN KENNEALLY, HERBERT TRIPLETT, VITO PITTA, FRANK GERACE, MICHAEL SLOAN, H.W. WARD, DALE STORMER, JOHN WILHELM, JACK PENMAN, BRIAN HANDELMAN, PAUL DiAMICO, C.A. CATALDO, JERRY BERNS, JOHN O'GARA, FLORENCE FAIR, GAIL FABIAN, BEN SCHMOUTEY, JACK STAFFORD, MICHAEL PISANELLO, RICHARD P. CRANE, JR., CHARLES R. ADKISSON, AND GREGORY E. SMITH, RESPONDENTS.

No. 24290

April 27, 1995                    894 P.2d 371

[Rehearing pending]

*Kummer Kaempfer Bonner & Renshaw,* Las Vegas; *Ross, Dixon & Masback* and *Lona T. Perry,* Washington, D.C., for Appellant.

*Wells, Kravitz, Schnitzer & Sloane,* Las Vegas, for Respondents.

## OPINION

*Per Curiam:*

The issue in this case is whether respondents were entitled to indemnification under an insurance policy issued by appellant American Casualty (American) for a judgment respondents were required to pay when they breached a contract. The parties stipulated that Illinois law governs this case since both the insurer and insured are domiciled in Illinois, and since the contract was negotiated and consummated there. *See* M & R Inv. Co., Inc. v. Fitzsimmons, 484 F. Supp. 1041 (D. Nev. 1980), *aff'd,* 685 F.2d 283 (9th Cir. 1982).

### FACTS

Respondent, Hotel and Restaurant Employees and Bartenders International Union Welfare Fund (the Fund), was formed as an umbrella organization for various health and welfare trusts from around the United States to increase culinary union members' purchasing power insofar as health and welfare services are concerned.

Pursuant to a declaration and agreement establishing the Fund (the Trust Agreement), the Fund is governed by appointed trustees (the Trustees). Paragraphs 9.01-9.04 of the Trust Agreement provide that the Trustees be indemnified by the Fund for actions taken and decisions made on behalf of the Fund provided that the Trustees do not violate the Employee Retirement Income Security Act (ERISA). As further protection for the Trustees, the Trust Agreement requires the Fund to purchase fiduciary liability insurance to cover the Trustees' acts or omissions in violation of their fiduciary duties. To that end, the Fund purchased from American a "Trustees Protective Liability Insurance Policy" (the Policy) to cover claims made against the Trustees for "wrongful acts."

On October 7, 1980, prior to the purchase of the Policy, the Trustees entered into an agreement (the Merger Agreement) with the trustees of the Southern Nevada Hotel and Restaurant

Employees and Bartenders Union Welfare Fund (the Local Fund). Under this merger agreement, the assets of the Local Fund were added to the Fund. The Merger Agreement also provided that the Trustees indemnify the Trustees of the Local Fund (the Local Trustees) for any losses, damages or claims brought against the Local Trustees, so long as the Local Trustees did not violate ERISA.

The Local Trustees were subsequently sued on the basis that they had violated ERISA. Pursuant to the Merger Agreement, the Local Trustees sought indemnification from the Fund. The Fund refused to indemnify the Local Trustees, claiming that the Local Trustees had potentially violated ERISA and that under the terms of the Merger Agreement, the Fund was not obligated to indemnify them. The Local Trustees brought an action against the Trustees of the Fund, claiming that they were entitled to indemnification.

On March 25, 1983, the Fund, through its attorney, Jack Reynolds, made a written demand upon American to defend the Trustees in the Local Trustees' action against them. In response to this demand, American took various actions in the lawsuit on behalf of the Fund trustees without reserving any rights. However, on December 21, 1983, American provided the Fund with a detailed reservation of rights indicating that a defense would be provided but that, under the Policy, the Fund was not entitled to indemnification for damages as a result of the lawsuit.

In May 1988, judgment was entered in favor of the Local Trustees against the trustees of the Fund for breach of contract. The Fund subsequently settled with the Local Trustees for $750,000. The Fund then brought suit in federal district court in Nevada against American, seeking a declaration that it was entitled to indemnification under the Policy, or, alternatively, that coverage existed based upon a theory of estoppel. The federal district court dismissed the lawsuit without prejudice for lack of complete diversity.

American then sought a declaratory judgment in the state district court against the Fund and its Trustees, claiming that there was no coverage under the terms of the Policy and Illinois law. The Fund counterclaimed, asserting the same arguments it had asserted in federal court. Both sides moved for summary judgment, which the district court granted in the Fund's favor. American appeals.

## DISCUSSION

The district court found that American incorrectly denied coverage under the Policy and therefore granted summary judgment

in favor of the Fund. Summary judgment is appropriate when, after reviewing the record in the light most favorable to the non-moving party, no issues of material fact remain. Butler v. Bogdanovich, 101 Nev. 449, 451, 705 P.2d 662, 663 (1985). This court's review of a summary judgment order is *de novo*. Tore, Ltd. v. Church, 105 Nev. 183, 185, 772 P.2d 1281, 1282 (1989).

We note that under Illinois law, the court's primary concern in interpreting an insurance policy is to effectuate the intent of the parties as expressed by the contract. State Farm Fire & Cas. Co. v. Moore, 430 N.E.2d 641, 646 (Ill. App. Ct. 1981). Where the terms of a policy are clear and unambiguous, its plain and obvious import will be given effect. *Id.* If, however, the policy language is ambiguous, the ambiguity is construed against the insurer and in favor of the insured, since the insurer drafted the policy. *Id.*

American argues that the district court erred in granting summary judgment in favor of the Fund because the liability was incurred by the Fund, which was not covered under the terms of the Policy; under the Policy, only the Trustees are covered. We first examine whether the Policy insured the Fund and then determine whether the liability was incurred by the Fund.

American contends that the Policy only provided coverage to the Trustees, not to the Fund. We agree. The Policy provides that " 'insureds' shall mean: (1) the Trustees, their predecessors, or their legal successors, individually or collectively, of the Trust [i.e., the Fund] . . . ."; (2) any employees of the Trust under the Policy, the Trustees are insured for claims brought against them where they have committed any "wrongful act."[1] A "wrongful act" is "any actual or alleged error or misstatement or misleading statement or act or omission or neglect or breach of duty by the Insureds in the discharge of their duties, individually or collectively, on behalf of the Trust." The language of the Policy clearly indicates that it protects the Trustees from losses occasioned by a breach of their fiduciary duties.

That the Policy protects the Trustees from these losses is further emphasized by the title of the Policy, "*Trustees* Protective Liability Insurance Policy," and by a provision in the Trust Agreement which requires the Fund to purchase the Policy. The Fund purchased the Policy pursuant to paragraph 9.07 of the

---

[1]The Policy provided that American would indemnify the Welfare Trustees for "all loss which said Insureds shall be legally obligated to pay" as a result of such wrongful acts. The term "loss" included "damages, judgments, settlements and costs."

Trust Agreement, which provides, "[t]he Welfare Fund shall purchase insurance, with recourse against the Trustees, in favor of the Fund insuring against any acts or omissions of the Trustees in violation of their fiduciary duties." This language also supports American's contention that the Policy was designed to protect the Trustees, and not the Fund.

Indeed, the Fund itself concedes that the Policy insured the Trustees. In its Answering Brief, the Fund states that the purpose of the Policy was to protect the Trustees should they be the subject of claim alleging a violation of their fiduciary duties.

Based upon the foregoing, we conclude that the Policy provided coverage to the Trustees rather than to the Fund. Having thus decided, we must next determine whether the settlement amount of $750,000 to the Local Trustees was incurred by the Fund or by the Trustees. If the settlement was to settle an obligation of the Trustees, then American is required to indemnify the Trustees under the Policy.

American argues that the settlement agreement between the Local Trustees and the Fund was executed solely on behalf of the Fund itself, not on behalf of the Trustees. First, American argues, the settlement agreement states that it was "entered into by [the Local Trustees] and the Hotel and Restaurant Employees International Union Welfare Fund [i.e., the Fund]." In addition, the Fund acknowledges that it, and not its Trustees, paid all of the $750,000 settlement. American also points out that the federal court's Conclusions of Law entering judgment in favor of the Local Trustees expressly provided that payment of the litigation expenses awarded to the Local Trustees was to be made "from the funds of the Fund." Further, American argues that under the language of the Trust Agreement, the Trustees had no personal liability for the indemnity obligation to the Local Fund. Paragraph 9.01 of the Trust Agreement provides that the Trustees would not be "personally liable or personally answerable for any liabilities or debts of the Welfare Fund or Welfare Plan contracted by them as such Trustees . . . or for the non-fulfillment of contracts or obligations of the Welfare Fund or Welfare Plan but same shall be paid out of the Welfare Fund." Paragraph 9.02 further provides:

> to the extent provided by ERISA, . . . the Trustees shall not be liable for any act or omission, and the Welfare Fund shall exonerate, reimburse, indemnify and save harmless the Trustees individually and collectively against any and all expenses and liabilities arising from the acts or omissions of those Trustees.

Based upon the foregoing, American asserts that the Fund, and not the Trustees, was liable to the Local Trustees.

However, the Fund contends that the Trustees were primarily liable for the $750,000 settlement funds, and that the Fund was only secondarily liable. The Fund bases this assertion on two premises. First, it relies on the Merger Agreement, which clearly was entered into by the Trustees of the Fund and the Trustees of the Local Fund. Second, the Fund notes that while the Trust Agreement required the Fund to indemnify its trustees, this requirement was subject to the condition that the Trustees not violate ERISA. Therefore, the Fund argues, "the liability of the Trustees was primary and individual, while the liability of the Fund was secondary based upon the satisfaction of a precondition—i.e., no violation of the law by the Trustees themselves."

We conclude that of the two positions advanced by the parties, that of the Fund is the most compelling. The judgment entered by the federal district court on May 10, 1988, was entered against the Trustees as named individuals. The judgment was worded, "Judgment is hereby entered in favor of Richard P. Crane, Jr., Charles R. Adkisson and Gregory E. Smith against the Trustees of the Hotel Employees and Restaurant Employees International Union Welfare Fund in the amount of . . . ." The subsequent settlement agreement entered into by the Fund was in direct response to that judgment. The fact that the Fund, and not the individual Trustees, paid the settlement, reflects the fact that the Fund was obligated to indemnify the Trustees anyway, since no ERISA violations had taken place. The direct payment by the Fund was the most efficient way to handle the settlement. Thus, even though the Fund paid the settlement, the Trustees were still primarily liable as individuals.

We hold that the district court was correct in finding that the Policy required American to indemnify the Fund. In view of this disposition, the Fund's allegations regarding estoppel need not be considered.

Accordingly, the district court's order is affirmed.