AMERICAN CASUALTY COMPANY OF READING, PA., A CORPORATION, APPELLANT, v. HOTEL AND RESTAURANT EMPLOYEES AND BARTENDERS INTERNATIONAL UNION WELFARE FUND, JOHN CULLERTON, LEWIS R. COHEN, DONALD J. DEPORTER, PATRICK KANE, DOMINIC LUONGO, A.W. MITCHELL, A.M. QUARLES, FREDERIC N. RICHMAN, WILLIAM SCHUMAN, EDWARD HANLEY, RONALD RICHARDSON, JOHN KENNEALLY, HERBERT TRIPLETT, VITO PITTA, FRANK GERACE, MICHAEL SLOAN, H.W. WARD, DALE STORMER, JOHN WILHELM, JACK PENMAN, BRIAN HANDELMAN, PAUL DIAMICO, C.A. CATALDO, JERRY BERNS, JOHN O'GARA, FLORENCE FAIR, GAIL FABIAN, BEN SCHMOUTEY, JACK STAFFORD, MICHAEL PISANELLO, RICHARD P. CRANE, JR., CHARLES R. ADKISSON, AND GREGORY E. SMITH, RESPONDENTS.

No. 24290

July 15, 1997                    942 P.2d 172

---

[3]THE HONORABLE A. WILLIAM MAUPIN, Justice, did not participate in the decision of this matter.

*Kummer Kaempfer Bonner & Renshaw,* Las Vegas; *Ross, Dixon & Masback* and *Lona T. Perry,* Washington, D.C., for Appellant.

*Wells, Kravitz, Schnitzer & Sloane,* Las Vegas, for Respondents.

## OPINION ON REHEARING

*Per Curiam:*

In our first Opinion in this case, American Casualty v. Union Welfare Fund, 111 Nev. 591, 894 P.2d 371 (1995), we affirmed the district court's order granting summary judgment in favor of respondents. Appellant has petitioned for rehearing.

Appellant American Casualty Company (American) argues in its petition for rehearing that this court overlooked its argument that the liability at issue in this matter arose from a contractual obligation under a merger agreement, and is not a "loss" covered

by the policy of insurance American issued. Specifically, American argues that "the insureds were simply required to pay money they had wrongfully withheld given their prior agreement to pay." We agree.

We overlooked this issue in our prior Opinion. Because this court's Opinion neglected to decide an issue presented in the briefs, and because that issue must be decided in favor of appellant, we grant rehearing. NRAP 40(c) (rehearing will be granted when this court has overlooked a material matter and when rehearing will promote substantial justice). For the reasons expressed below, we reverse the summary judgment in favor of respondents, and we remand this matter to the district court for further proceedings.

## FACTS

Respondent Hotel and Restaurant Employees and Bartenders International Union Welfare Fund (the International Fund), was formed as an umbrella organization for various health and welfare trusts from around the United States to increase culinary union members' purchasing power of health and welfare services.

Pursuant to a declaration and agreement (the trust agreement) which established the International Fund, the International Fund is governed by appointed trustees (the international trustees). Paragraphs 9.01-9.04 of the trust agreement provide that the International Fund will indemnify the international trustees for actions they take and decisions they make on behalf of the International Fund, provided that the international trustees do not violate the Employee Retirement Income Security Act (ERISA). As further protection for the international trustees, the trust agreement requires the International Fund to carry fiduciary liability insurance to cover the international trustees' acts or omissions which violate their fiduciary duties. To that end, the International Fund purchased from American a "Trustees Protective Liability Insurance Policy" (the policy) to cover claims made against the international trustees for "wrongful acts."[1] It is the scope of this policy that is at issue in this appeal.

On October 7, 1980, prior to the purchase of the policy, the international trustees entered into an agreement (the merger agreement) with the trustees of the Southern Nevada Hotel and Restaurant Employees and Bartenders Union Welfare Fund (the Local Fund and the local trustees). Under this merger agreement, the assets of the Local Fund, worth approximately thirty million

---

[1]The policy provided coverage from October 18, 1981, to October 18, 1984, and had a retroactive date to 1974.

dollars, were added to the International Fund. The Local Fund was left with no assets. In consideration for this thirty million dollar payment, the merger agreement provided that the international trustees would indemnify the local trustees for any losses, damages or claims brought against the local trustees, so long as the local trustees did not violate ERISA. Thus, the international trustees' obligation to indemnify the local trustees was contractual, and was bought and paid for.

The local trustees were subsequently sued. The international trustees elected not to defend or indemnify the local trustees. The decision not to defend was based in part on the fact that the complaint included allegations that the local trustees had violated ERISA. The international trustees maintained that they were not required to defend the local trustees if violations of ERISA had occurred. Actually, the merger agreement absolutely required the international trustees to defend the local trustees, but allowed the international trustees to recover from any local trustee "any costs and expenses incurred in defending any such [local] Trustee" if the local trustee was "*adjudged* in any action, suit, or proceeding to be guilty of any violation of ERISA." (Emphasis added.) Thus, the mere allegation of ERISA violations was not a valid basis for the international trustees' refusal to defend the local trustees.

The local trustees brought a lawsuit in federal court against the international trustees, claiming that the local trustees were entitled to indemnification.[2] On March 25, 1983, the International Fund, through its attorney Jack Reynolds, made a written demand on American to defend the international trustees against the local trustees' lawsuit. In response to this demand, American took various actions in the lawsuit on behalf of the international trustees, allegedly without reserving any rights. However, on December 21, 1983, American provided the International Fund with a detailed reservation of rights indicating that a defense would be provided but that, under the policy, the international trustees were not entitled to indemnification for damages as a result of the lawsuit.[3]

In May of 1988, judgment was entered in the federal lawsuit in favor of the local trustees against the international trustees for

---

[2]This action was filed in federal court as a counterclaim to a related action that was pending in federal court.

[3]The record indicates that American asserted a general reservation of rights on September 30, 1983, but did not state specific grounds for the reservation of rights at that time. American provided the International Fund with a detailed reservation of rights on December 21, 1983, and that reservation of rights included the theory on which American relies in this appeal, and particularly in this petition for rehearing.

breach of contract. Because the local trustees had prevailed on the claims alleging ERISA violations, the international trustees were held contractually liable for the local trustees' legal costs in defending the suit. This was the consideration that had been purchased and paid for by the local trustees in the merger agreement.

The International Fund subsequently settled with the local trustees for $750,000. The International Fund then brought suit in federal court against American, seeking a declaration that the international trustees were entitled to indemnification under the policy. The International Fund argued alternatively that coverage existed based on a theory of estoppel. The federal district court dismissed the lawsuit without prejudice for lack of complete diversity.

American then sought a declaratory judgment in state district court against the International Fund and its trustees, claiming that no coverage existed under the terms of the policy and Illinois law. The International Fund counterclaimed, asserting the same arguments it had asserted in federal court. Both sides moved for summary judgment, which the district court granted in the International Fund's favor. American appeals.

## DISCUSSION

In our first Opinion in this case, we determined that the policy provided coverage to the international trustees, but not to the International Fund. *American,* 111 Nev. at 595, 894 P.2d at 374. We further determined that the liability resulting from the federal judgment was incurred by the international trustees, not by the International Fund. *Id.* We specifically reaffirm those determinations.

Nevertheless, we stated in our prior Opinion that "[i]f the settlement was to settle an obligation of the [international] Trustees, then American is required to indemnify the [international] Trustees under the Policy." It is this statement which may have been too broad. American is, of course, only required to indemnify the international trustees to the extent that the policy covers the loss at issue. We neglected to address the question of whether the policy covers the loss at issue. We turn now to address that question.

American contends in its petition for rehearing that this court overlooked American's argument that the policy does not cover claims for intentional breaches of contract because the policy covers only fortuitous acts. Our prior Opinion in this matter,

however, specifically states that the issue "is whether respondents were entitled to indemnification . . . for a judgment respondents were required to pay when they breached a contract." *American*, 111 Nev. at 592, 894 P.2d at 372. Although we did not address the question of whether the policy covered intentional acts, we were aware of the argument, and we impliedly rejected it when we concluded that "the district court was correct in finding that the Policy required American to indemnify the [International] Fund." *Id.* at 596, 894 P.2d at 375.

We note that the policy provided coverage for "wrongful acts," and defined that term broadly to include "any actual or alleged error or misstatement or misleading statement or act or omission or neglect or breach of duty by the Insureds in the discharge of their duties, individually or collectively, on behalf of the Trust." Policy ¶ II(c). Further, the policy expressly excluded coverage for intentional acts which amounted to a crime, but did not exclude coverage for intentional acts not amounting to a crime. Policy ¶ III(a)(5). Although the international trustees intentionally breached the merger agreement, they did so for alleged business reasons, in the discharge of their duties to and on behalf of the International Fund. Also, there has never been any allegation that the international trustees were guilty of any criminal act. We conclude, therefore, that the policy was expressly intended to cover the intentional acts of the international trustees at issue in this case.

Nevertheless, American contends correctly that the judgment against it in this case represents an amount that cannot be properly considered a "loss" resulting from any "wrongful act" of the international trustees. The policy provides that American agrees that "if claim or claims are [sic] first made against the Insureds [i.e., the international trustees], individually or collectively during the policy year for *a Wrongful Act,* [American] will pay on behalf of the Insureds all loss which said Insureds shall be legally obligated to pay." Policy ¶ I(a) (emphasis added). Although a loss is defined very broadly to include almost any amount awarded against the insureds, the issue in this case is not the definition of "loss," or whether the damages in this case could fall within that definition. Instead, the issue is whether the judgment which the international trustees were required to pay was a "loss" that *resulted from* any "wrongful act" of the international trustees. Simply put, the policy only covers loss resulting from wrongful acts, whether actually committed or merely alleged.

American argued in the district court and in its briefs in this court that the policy did not cover the loss in this case because the

loss in this case did not result from any "wrongful act" of the international trustees; the "loss" was not a loss at all; it was merely the judicial enforcement of the international trustees' contractual obligations to the local trustees under the merger agreement. American argues that it never agreed to pay the international trustees' obligations under the merger agreement; an obligation for which the international trustees were fully paid.

The "loss" in this case did not result from any actual or alleged "wrongful act" of the international trustees. The "wrongful act" was the failure to defend.[4] The only loss this failure occasioned was the expense involved in defending the action of the local trustees against the international trustees. This failure to defend did not result in the local trustees' costs in defending the third party action against them, because the costs involved in defending the third party suit would have been incurred whether or not the international trustees had committed the wrongful act of failing to defend the local trustees. Although the local trustees initially paid the costs of defending against the third party suit, the international trustees were contractually obligated to bear those costs. Had the international trustees not committed the wrongful act of failing to defend the local trustees, *i.e.,* had the international trustees elected to honor their obligation and defend the local trustees, the international trustees would have been obligated to pay the cost of the defense, and they would not have been in a position to pass their legal obligation on to their insurance carrier. It is the cost of this defense that was reduced to a judgment in the federal action against the international trustees.

The international trustees were required to pay their contractual obligation. This contractual obligation did not result from their wrongful act of refusing to satisfy it. To hold otherwise would allow an insured to turn all of its legal liabilities into insured events by the intentional act of refusing to pay them. The refusal to pay an obligation simply is not the cause of the obligation, and the international trustees' wrongful act in this case did not result in their obligation to pay; their contract imposed on them the obligation to pay.

The international trustees argue that the obligation to indem-

---

[4]The only wrongful act the international trustees relied on in their suit against American was the international trustees intentional breach of the merger agreement with the local trustees. This fact was reaffirmed at the oral argument in this case. Justice Rose asked: "What was the wrong they [the international trustees] did?" Counsel for respondents replied: "Nothing more than the breach of contract itself by not providing a defense." Justice Rose stated: "That was it?" Counsel replied: "That was it."

nify the local trustees would have arisen as a matter of law as a result of the merger between the two funds. Thus, they argue that their obligation is not merely contractual, but is also a legal debt which should be covered by the policy.[5] This argument misses the point. The policy is not a general liabilities policy. It does not purport to cover any liability that the international trustees might incur personally or on behalf of the International Fund. Instead, the policy is expressly limited to loss resulting from a wrongful act. It is irrelevant whether the international trustees' obligation to indemnify the local trustees is express or implied; that liability is the result of a lawful merger, not of any wrongful act.

American did not insure the international trustees against debts they are obligated to pay pursuant to the merger agreement with the local trustees. Because the judgment of the district court is based on a theory that the contractual obligation of the international trustees under the merger agreement is covered as a loss under the policy, we must reverse that judgment.

We note, nevertheless, that the international trustees argued below that they were entitled to coverage under a theory of estoppel based on Illinois law. Specifically, the international trustees argued that, under Illinois law, American waived its right to contest coverage under the policy when it undertook to defend the international trustees in the local trustees' suit against them without making a timely reservation of rights. The international trustees argue further that they have been prejudiced by American's actions in their ability to defend the suit brought by the local trustees. American sought summary judgment on the international trustees' claim of estoppel, but the district court expressly denied summary judgment on this ground, concluding that material issues of fact remained for trial. On appeal, all parties argue that summary judgment on this issue should have been granted in their favor.

We decline the parties' invitations to decide this issue in the first instance in this appeal. Accordingly, we reverse the district court's judgment, and we remand this matter to the district court for further proceedings consistent with this Opinion.[6]

---

[5]The international trustees' reliance on Silver v. Telerent Leasing, 105 Nev. 30, 768 P.2d 879 (1989), is misplaced. In that case, this court found the right of indemnification in the express agreements of the parties. We did not imply a right of indemnity. Nevertheless, in an appropriate case, an indemnity will be implied from the relationship of the parties. See Reid v. Royal Insurance Co., 80 Nev. 137, 390 P.2d 45 (1964).

[6]THE HONORABLE A. WILLIAM MAUPIN, Justice, did not participate in the decision of this appeal.