**PACIFIC INSURANCE COMPANY, LIMITED, Plaintiff,**

v.

**EATON VANCE MANAGEMENT, Defendant.**

#### No. CIV.A. 00–11128–JLT.

United States District Court, D. Massachusetts.

April 30, 2003.

---

Harvey Weiner, Peabody & Arnold LLP, Boston, MA, for Pacific Insurance Company, Limited, Plaintiff.

Jeffrey B. Maletta, Kirkpatrick & Lockhart, Washington, DC, D. Lloyd Macdonald, Kirkpatrick & Lockhart, Boston, MA, for Eaton Vance Management, Defendant.

*MEMORANDUM*

TAURO, District Judge.

Plaintiff, Pacific Insurance Company, Limited ("Pacific"), seeks a declaration that Pacific's Mutual Fund Errors and Omissions Policy ("Policy") does not cover Defendant Eaton Vance Management's ("Eaton Vance") claim, which arises from Defendant's failure to fund a particular profit sharing plan ("Plan"). Both parties filed cross-motions for summary judgment with respect to liability. This court issued a Memorandum and Order on August 14, 2002 ("August 14 Ruling"), finding for Defendant on Counts I, II, III and IV, and finding for Plaintiff on Count V. The net effect of the court's ruling was twofold: (1) the Policy did cover Eaton Vance's claim; but (2) each individual employee's claim to a funded account under the Plan constituted a separate claim against Eaton Vance, and thus the Policy's deductible provision applied separately to each one of those claims. Before the court now is the assessment of damages.

**BACKGROUND**

Pacific issued the Policy to Eaton Vance on August 1, 1997. The Policy ran from August 1, 1997 to August 1, 1999. Paragraph CC of Endorsement # 1 of the Policy provides coverage for:

Loss or liability incurred by the Insured, from any claim made against the Insured during the Endorsement Period, by reason of any actual or alleged failure to discharge his or its duties or to act prudently within the meaning of the Employee Retirement Income Security Act of 1974 ["ERISA"] or any amendments thereto or successor law or any rule or regulation, or by reason of any actual or alleged breach of fiduciary responsibility within the meaning of said Act or any amendments thereto or successor law or any rule or regulation in the Insured's capacity as a fiduciary with respect to any pension or employee benefit plan or trust.[1]

The Policy included a deductible, requiring Eaton Vance to "bear the first $1,000 of loss incurred from each and every claim incurred including costs and expenses incurred in the investigation or defense of any claim."[2] The Policy further provided, in § C–1 of the Conditions, that "[t]he Insureds shall not admit liability for or settle any claim in excess of the deductible or incur any costs or expenses in connection therewith without the written consent of [Pacific], which consent shall not be unreasonably withheld."[3] Finally, § C–4 of the Policy stated that notice to Pacific of any claim or potential claim was a condition precedent to any right to coverage under the Policy.[4]

In 1986, Eaton Vance amended its profit-sharing Plan, which changes became effective November 1, 1984.[5] Eaton Vance inadvertently changed the language of the Plan such that all employees became eligible to participate unless specifically ex-

1. Pl.'s Compl. for Declaratory J. ¶ 11.

2. Pl.'s Compl. for Declaratory J. ¶ 26.

3. Pl.'s Compl. for Declaratory J. ¶ 19.

4. Pl.'s Compl. for Declaratory J. ¶ 23.

5. Decls. of Daniel J. Ethier and Mark Burkhard Submitted in Supp. of Mot. of Eaton Vance Mgmt. for Summ. J., Tab 2, Decl. of Mark Burkhard ("Burkhard Decl.") ¶ 6.

cluded.[6] Additionally, the definition of "employer" was expanded to include Eaton Vance and all of its "commonly controlled organizations."[7] Prior to these changes, employees of commonly controlled organizations were not included in the Plan, unless the organization explicitly adopted the Plan in writing.[8] As Eaton Vance was unaware of the change in the Plan's language, it did not recognize employees of commonly controlled organizations as Plan participants and did not establish accounts for them.[9]

In February 1999, Wilfredo Hernandez ("Hernandez"), an employee of Compass Management, Inc. ("Compass"), a commonly controlled organization, notified Eaton Vance that money due him under the Plan had not been deposited into his retirement account.[10] After consulting its outside ERISA counsel, Bingham Dana, LLP, Eaton Vance determined that the change in the Plan's wording entitled Hernandez to a funded account.[11] On April 28, 1999, Bingham Dana notified Hernandez that Eaton Vance should have recognized Hernandez and other "similarly situated employees" as Plan participants and stated that Eaton Vance would fund those accounts to the level they would have been funded had the employees been recognized as Plan participants all along.[12] Eaton Vance identified all eligible employees and established accounts for employees who were previously left out of the Plan.[13] Eaton Vance did not notify Pacific of Hernandez' claim, however, until June 18, 1999–four months after Hernandez made his claim and nearly six weeks after Eaton Vance had admitted liability.[14]

Eaton Vance seeks to recover the payments it made to establish and fund the accounts for the eligible employees initially left out of the Plan, as well as the costs of defense and investigation.[15] Eaton Vance paid $880,869.86 to fund these employee accounts.[16] Eaton Vance has incurred attorneys fees and related expenses of $120,579.17 in connection with the unfunded employee accounts, of which only $12,537.00 remains in dispute.[17] The $12,537.00 reflects defense and investigation costs incurred prior to June 18, 1999, the date on which Eaton Vance notified Pacific of Hernandez's claim ("Pre–Tender

6.  Burkhard Decl. ¶ 7.

7.  Burkhard Decl. ¶ 7; Burkhard Decl. Ex. C, §§ 2.7, 3.5.

8.  Burkhard Decl. ¶ 4, Burkhard Decl. Ex. A, §§ R5–1, R1–1, R1–2.

9.  App. of Additional Materials Submitted in Supp. of Mot. of Eaton Vance Mgmt. for Summ. J. ("Eaton App."), Tab 1, Dep. of Barry Rowland at 44–46; Burkhard Decl. ¶¶ 7–10; Decls. of Daniel J. Ethier and Mark Burkhard Submitted in Supp. of Mot. of Eaton Vance Mgmt. for Summ. J., Tab 1, Decl. of Daniel J. Ethier ("Ethier Decl.") ¶ 12.

10.  Pl.'s Compl. for Declaratory J. ¶ 6; Burkhard Decl. ¶ 11; Burkhard Decl. Ex. E.

11.  Burkhard Decl. ¶ 13; Burkhard Decl. Ex. F.

12.  Burkhard Decl. ¶¶ 15, 16; Burkhard Decl. Ex. G.

13.  Ethier Decl. ¶¶ 10, 14, 16.

14.  Eaton App., Tab 2, Dep. of David A. Benfield ("Benfield Dep.") at 22–24.

15.  Def.'s Submission on Damages Pursuant to this Court's Order Dated August 14, 2002 ¶¶ 1, 2.

16.  Eaton Vance Mgmt.'s Reply to Pacific Ins. Co. Ltd.'s Opp'n to Eaton Vance Mgmt.'s Submission on Damages ("Def.'s Reply") at 2; Def.'s Reply Ex. 1.

17.  Def.'s Reply at 8.

Costs").[18] Defendant also seeks reimbursement in the amount of $2,968.07 for deposition transcripts.

Eaton Vance also asks for pre-judgment interest at the Massachusetts statutory rate of twelve percent per annum from the date of breach on the amounts it paid out to fund the unfunded Plan accounts and to cover attorneys fees and related expenses.[19] With respect to the $880,869.86 that Eaton Vance paid to fund the unfunded employee accounts, accrued interest equals $97,580.59 as of November 4, 2002 and .0329%, or approximately $289.81, each day thereafter.[20] With respect to the Pre–Tender Costs the prejudgment interest is $5,057.09 as of November 4, 2002 plus approximately $4.12 each day after that.[21]

Finally, Eaton Vance seeks prejudgment interest on $49,099.50 in litigation costs it incurred after Eaton Vance notified Pacific of the claims against it ("Post–Tender Costs"), although Pacific has already reimbursed Eaton Vance for these Post–Tender Costs. Pacific paid $24,644.50 on January 6, 2003 and $24,455.00 on February 10, 2003. Pacific claims that the original request for reimbursement from Eaton Vance was a "one line bill," and that Pacific never received the supporting documentation it requested. Eaton Vance, without admitting any failure to provide adequate documentation with its initial reimbursement request, provided that supporting documentation in its filing with the court on November 4, 2002.[22] On November 4, 2002 the accrued interest on the Post–

Tender Costs amounted to $11,801.28. Interest accrued each day thereafter by approximately $8.11 per day until January 6, 2003 and $8.05 per day until February 10, 2003.

In its August 14 Ruling, this court held that Eaton Vance had breached its fiduciary duty under ERISA, that this breach was covered by the Policy, and that the accounts of Hernandez and other similarly situated employees were unfunded because of this breach. This court further found that Pacific was not prejudiced by Eaton Vance's delay in notifying Pacific of Hernandez' claim. Pacific, therefore, could not rely on Eaton Vance's late notice to avoid its obligations under the Policy. With respect to the deductible, however, "[b]ecause Eaton Vance addressed the situation as if all individuals situated similarly to Hernandez had made claims," each claim is subject to its own $1,000 deductible. Eaton Vance identified 49 individuals for whom accounts needed to be established and funded, and $49,000 must therefore be subtracted from Eaton Vance's damage award to determine Pacific's liability under the Policy.

## DISCUSSION

A. *The Amount Paid to Establish and Fund the Employee Accounts.*

■ Eaton Vance seeks reimbursement for the full amount it paid to establish and fund Plan accounts for the employees erroneously excluded after the 1986 amendments. Pacific, on the other hand, argues

---

**18.** Def.'s Reply at 6.

**19.** M.G.L. ch. 231 § 6C. This is equal to an interest rate of .0329% per day.

**20.** Because Plaintiff does not oppose Defendant's calculation of prejudgment interest, nor Defendant's determinations as to the date of breach, and only challenges Defendant's

right to prejudgment interest in the first place and the applicable interest rate, the court accepts Defendant's calculations and breach date determinations.

**21.** Def.'s Reply at 8.

**22.** Def.'s Reply Ex. 2.

that Hernandez and the other excluded employees simply forced Eaton Vance to pay money to fund accounts that Eaton Vance should have been funding all along. Pacific thus claims that it is not obligated to reimburse this amount because this payment does not constitute a "loss" within the meaning of the Policy. In construing ERISA fiduciary liability policies, courts look to state insurance and contract law rather than the federal common law of ERISA.[23] As support for its contention, Pacific cites to several cases, none of which are binding on this court.[24]

Pacific did not raise this argument in its motion for summary judgment. This court thus agrees with Eaton Vance that Pacific is seeking a "second bite of the apple," challenging this court's express finding in the August 14 Ruling that Eaton Vance "breached its fiduciary duty under ERISA" and that "[t]he Policy; therefore, covers the liabilities stemming from Eaton

Vance's failure to identify Hernandez and others as Plan participants."[25] Even so, Pacific's reliance on the three cases it cites in support of its claim that the amount paid to fund the unfunded accounts is not within the Policy's coverage is misplaced.

■ As an initial matter, each of the decisions relied on by Plaintiff involve insurance policies that provide that the insurance carrier will indemnify an insured's *loss.*[26] In *Local 705 International Brotherhood of Teamsters Health & Welfare Fund v. Five Star Managers,* the court looked to the dictionary definition of loss to find that the insurance policy did not cover the insured's payment of money to which the insured had no right in the first place.[27] In other words, the *Local 705* court found that it could not ignore the plain and ordinary meaning of "loss," and that the insured "simply [could not] lose

---

**23.** ERISA Fiduciary Law 37 (Susan P. Serota & Frederick A. Brodie eds., 1995).

**24.** *Coregis Ins. Co. v. Am. Health Found., Inc.,* 241 F.3d 123 (2d Cir.2001) (noting in a footnote that the court need not decide "the potentially serious questions raised ... whether the Policy's limit of coverage to 'LOSS which the INSUREDS shall be legally obligated to pay ...'" limited recovery of money paid to fulfill a contractual obligation); *Local 705 Int'l Bhd. of Teamsters Health & Welfare Fund v. Five Star Managers, L.L.C.,* 316 Ill.App.3d 391, 249 Ill.Dec. 75, 735 N.E.2d 679 (2000) (holding that the plain meaning of "loss" could not be ignored and did not include the reimbursement of funds transferred out of the account at issue in violation of ERISA fiduciary duties because the insured never had a right to those funds in the first place); *Am. Cas. Co. of Reading, Pa. v. Hotel & Rest. Employees & Bartenders Int'l Union Welfare Fund,* 113 Nev. 764, 942 P.2d 172 (1997) (finding that a loss from the failure to honor a contractual obligation to pay litigation expenses was not a loss *resulting from* a wrongful act, within the meaning of the policy, because the obligation to pay pre-dated the wrongful act of refusing to pay it).

**25.** Mem. of August 14, 2002 at 10.

**26.** *Coregis Ins. Co.,* 241 F.3d at 130 n. 7 (noting that the policy limited coverage to "LOSS which the INSUREDS shall be legally obligated to pay ... due to a WRONGFUL ACT"); *Local 705 Int'l Bhd. of Teamsters Health & Welfare Fund,* 249 Ill.Dec. 75, 735 N.E.2d at 683 (noting that the policy required the insurance company to "pay on behalf of the 'insured' the 'ultimate net loss' which the 'insured' shall become legally obligated to pay ..."); *Am. Cas. Co. of Reading, Pa.,* 113 Nev. at 769, 942 P.2d 172 (framing the issue as "whether the judgment which the international trustees were required to pay was a 'loss' that resulted from any 'wrongful act' of the international trustees").

**27.** *Local 705 Int'l Bhd. of Teamsters Health & Welfare Fund,* 249 Ill.Dec. 75, 735 N.E.2d at 683 (noting that the payment of money to which the insured had no right was not a loss within the dictionary's definition, defining "loss" as "the act or fact of losing: failure to keep possession: DEPRIVATION").

that to which it was not legally entitled."[28] The Eaton Vance–Pacific Policy, however, expressly covers not only Defendant's *loss* but also the *liability* incurred as a result of a breach of their fiduciary duty.[29] The relevant inquiry, then, is not whether the payment made to fund the unfunded employee accounts constitutes a loss, but instead whether that payment constitutes either a loss or a liability.

This court explicitly held that "[w]hen [Eaton Vance] failed to recognize Hernandez and others as Plan participants, and failed to establish and fund retirement accounts for those employees ... Eaton Vance breached its fiduciary duty under ERISA. The Policy, therefore, covers the liabilities stemming from Eaton Vance's failure to identify Hernandez and others as Plan participants."[30] In so holding, this court made it very clear that it believed that the payments made to fund the previously unfunded employee accounts constituted a "liability" within the meaning of the Policy.

Such a finding is not contradicted by the ordinary meaning of the word "liability," which is the state of being "obligated according to law or equity: RESPONSIBLE."[31] Unlike "loss," which may be predicated on a finding of possession first, liability requires no such factual underpinning to support its existence. The inquiry becomes, then, whether the liability Eaton Vance incurred was the kind of liability Pacific agreed to indemnify. In other words, was it "liability incurred by the Insured, from any claim made against the Insured during the Endorsement Period, ... by reason of any actual or alleged breach of fiduciary responsibility within the meaning of [ERISA]." And this court already answered that question in the affirmative when it allowed Eaton Vance's Motion for Summary Judgment as to Count I in its August 14 Ruling.

Pacific further asserts that even if the portion of the contribution that represents the principal paid to fund the accounts falls within the Policy's coverage, the amount paid representing the interest that principal would have earned had the accounts been timely funded does not. In so arguing, Pacific relies on *Town of Brookhaven v. CNA Insurance Companies*, a decision from the Eastern District of New York.[32] In *Brookhaven*, the town had failed to turn over in a timely fashion each school district's share of tax revenues. The school districts sued the town of Brookhaven to disgorge the town of the interest it had earned on that tax revenue by reason of its delayed disbursement to the school districts. The *Brookhaven* court, once again construing an insurance policy that covered only the town's "loss," and not the town's "loss and liability," held that the interest the town earned "constitutes the benefit enjoyed by the town by virtue of its improper withholding of money" and that "[s]ince the town was never entitled to the use of those funds, disgorgement of them does not cause 'injury or damage' to the town within the meaning of the policy."[33]

---

28.  *Id.* at 684.

29.  Pl.'s Compl. for Declaratory J. ¶ 11.

30.  Mem. of August 14, 2002 at 10.

31.  Webster's Ninth New Collegiate Dictionary 687 (1986).

32.  *Town of Brookhaven v. CNA Ins. Cos.*, No. CV–86–3569, 1988 WL 23555 (E.D.N.Y. Feb. 24, 1988).

33.  *Id.* at *3. That policy, reproduced in part in the opinion, defined "loss" as "any amount which the Assureds or the Public Entity are legally obligated to pay to a claimant on account of injuries or damages suffered by such claimant, or which the Public Entity may be

■ *Brookhaven* is inapposite, regardless of whether the portion of the $880,869.86 that replaces the interest a properly funded account would have earned is a "loss or liability" under the Policy. The *Brookhaven* policyholder profited from slow disbursements to the school districts, because the town earned interest while that money remained in its possession. The town ultimately disbursed the funds to the school districts, but retained the interest that it had earned in the interim. In the instant case, however, there is nothing but a conclusory allegation that Eaton Vance "had the use of earnings on money it unlawfully retained."[34] That Eaton Vance failed to fund certain accounts is clear. But what is not clear is what Eaton Vance did with the money it wrongfully, albeit inadvertently, retained. Pacific points to nothing that suggests that Eaton Vance held on to the principal that would have funded the accounts of Hernandez and other similarly situated employees, invested that money and profited by retaining the interest it earned. Thus, Pacific's allegations are insufficient to persuade this court that Eaton Vance will receive a windfall if Pacific is forced to reimburse Eaton Vance for the full amount, principal plus interest, that it paid to fund the accounts to the level they would have been funded had Eaton Vance contributed to the accounts all along.

That being said, even if the amount that Eaton Vance paid constituting interest were not a "loss" within the meaning of the Policy,[35] this court finds no meaningful distinction between the interest and the principal to justify a finding that the portion representing interest is not a liability within the meaning of the Policy. Pacific is therefore obligated to reimburse Eaton Vance the full $880,869.86 that Eaton Vance paid to establish and fund the accounts to the level they would have been had the accounts been funded from the Plan's 1984 effective date.[36]

required or permitted by law to indemnify the Assureds, for a claim or claims made against the Assureds or the Public Entity for a Wrongful Act and shall include damages, judgments, settlements, costs, charges and expenses ... incurred in the defense of actions, suits or proceedings and appeals therefrom .... " *Id.* "Wrongful Act" was defined as "any actual or alleged error or misstatement or act or omission or neglect or breach of duty including misfeasance, malfeasance and non-feasance by the Assureds in the discharge of their duties for the Public Entity, individually or collectively, or any matter claimed against them solely by reason of their being or having been Assureds." *Id.*

**34.** Opp'n of Pacific Ins. Co., Ltd., to Eaton Vance Mgmt.'s Submission on Damages ("Pl.'s Opp'n") at 4.

**35.** *Local 705*, one of the cases that Pacific cites in support of its argument that Eaton Vance is not entitled to indemnification, held that reimbursement of an amount wrongfully obtained does not constitute a loss. *Local 705 Int'l Bhd. of Teamsters Health & Welfare Fund*

*v. Five Star Managers, L.L.C.*, 316 Ill.App.3d 391, 249 Ill.Dec. 75, 735 N.E.2d 679, 683 (2000). Interestingly, however, the *Local 705* court left undisturbed the lower court's finding that payment of the interest on the amount wrongfully obtained *did* constitute a loss. *Id.* at 682–84 (noting that the court need not determine whether the payment of interest on the amount wrongfully withheld constituted a loss, because the amount was well within the $10 million layer of coverage to which another insurance company had already admitted liability).

**36.** Pacific also argues that the Policy provides coverage only for "[l]oss or liability incurred by the Insured, from any claim made against the Insured during the Endorsement Period ... " and that "claim" is defined as "any demand received by an Insured, and any civil, criminal, administrative, arbitration, investigatory or other action or proceeding initiated against an Insured." Pl.'s Opp'n at 5. Pacific asserts that Hernandez is the only employee that made a claim against Eaton Vance, and that Pacific is therefore only responsible for payments made to fund Hernandez's account.

### B. *The Pre–Tender Costs.*

Pacific argues that it is not required to reimburse the $12,537.00 in Pre–Tender Costs, pointing to language in the Policy that requires Eaton Vance to notify Pacific of any claim. In particular, Endorsement 1, § C–1 (Settlement) provides:

> The Insureds shall not admit liability for or settle any claim in excess of the deductible or incur any costs or expenses in connection therewith without the written consent of the Company, which consent shall not be unreasonably withheld. If such consent is given, the Company shall pay such costs, expenses and settlements, subject to the limit of liability and the deductible amount. It shall be the duty of the Insureds, and not the Company, to defend claims. The Insureds may retain counsel with the written consent of the Company, which consent shall not be unreasonably withheld. The Company may, at its own expense, but is not obligated to, associate with any Insured in the investigation, defense or settlement of any claim and, in that connection, the Insured will provide the Company with such information and cooperation as the Company may reasonably request.

Section C–4 adds that notice to Pacific of any claim is a condition precedent to any right to coverage under the Policy.[37] Eaton Vance, on the other hand, argues that because Pacific was not prejudiced by Eaton Vance's failure to timely notify them of the claim, and because the Policy clearly delegates to Eaton Vance the responsibility to defend claims, Pacific is obligated to reimburse the Pre–Tender Costs.

Under Massachusetts law, an insurance company is not relieved of its duty under a policy merely because the insured fails to give timely notice of a claim against it.[38] An insurance company must "prove both that the notice provision was in fact breached and that the breach resulted in prejudice to its position." [39] Pacific argues that it need not show prejudice here because that rule's purpose is to prevent the insured from suffering a complete forfeiture of coverage through a failure to provide timely notice where that failure has resulted in no prejudice to the insurance company.[40] Pacific insists that because it has already paid the Post–Tender Costs, Eaton Vance will not suffer a complete forfeiture of coverage, and the rule requiring a finding of prejudice does not apply. For its part, Eaton Vance argues that the cases on which Pacific relies are cases in which the insurance company had a duty to defend the insured, and their reasoning is thus inapplicable here. Because the Policy clearly delegated the responsibility to defend to Eaton Vance, Eaton Vance asserts that a finding of prejudice is necessary to justify relieving Pacific of its obligation to reimburse all litigation expenses, including the Pre–Tender Costs. Eaton Vance has the better of the two arguments.

---

*Id.* This argument, already made in Pacific's cross motion for summary judgment, was expressly rejected in the August 14 Ruling and will not be revisited here.

**37.** Pl.'s Compl. for Declaratory J. ¶ 23.

**38.** *Managed Health Care Sys., Inc. v. St. Paul Fire & Marine Ins. Co.,* No. 98–CV–10831, 2001 U.S. Dist. LEXIS 18302, at *3 (D.Mass. Sept. 28, 2001) (quoting *Johnson Controls,*

*Inc. v. Bowes,* 381 Mass. 278, 409 N.E.2d 185, 188 (1980)).

**39.** *Johnson Controls, Inc.,* 409 N.E.2d at 188.

**40.** *Managed Health Care Systems. Inc.,* 2001 U.S. Dist. LEXIS 18302, at *6 (citing *Am. Mut. Liab. Ins. Co. v. Beatrice Cos.,* 924 F.Supp. 861 (N.D.Ill.1996), in support of its finding that where forfeiture is not complete, the plaintiffs must bear the defense costs in-

■ The cases that Pacific cites in support of its contention that the Policy does not obligate it to reimburse Eaton Vance for the Pre–Tender Costs concern insurance policies that obligated the insurance company to defend the insured.[41] Thus although they provide some insight into the contours of the rule requiring a finding of prejudice, this court is not convinced that their reasoning applies where the insured is wholly responsible for defending itself. Specifically, in *Managed Health Care Systems, Inc. v. St. Paul Fire & Marine Insurance Company*, the court abandoned the rule requiring prejudice because there was no complete forfeiture but also because "[b]y giving [the insurance company] no notice during the first year of suit, the [insured] left [the insurance company] with no power to affect the course and cost of the litigation during that time."[42] Similarly, in *American Mutual Liability Insurance Company v. Beatrice Companies, Inc.*, the court held that it did not need to reach the question of prejudice with respect to costs incurred prior to notification of the claim because "[a]s a general rule, an insurer has no duty to defend until it receives notice of a claim."[43] The court went on to note that there may be tactical reasons behind an insured's decision to retain control over the initial stages of defense, but this did not mean that the insured should lose all right to coverage.[44] What seems to underlie these two decisions is that, where the insurer has a duty to defend the insured, there is an inherent prejudice when an insured

makes decisions that impact the defense. Essentially, it is unfair to force the insurer, who might have made different choices, to pay for the defense prior to notification of a claim. This concern, however, is not present where the policy specifically absolves the insurer of any duty to defend.

■ Under the Policy at issue, Pacific explicitly delegated the duty to defend to Eaton Vance, asking only that Pacific be given the opportunity to consent. The Policy even went so far as to state that the consent would not be unreasonably withheld. There is thus nothing unfair about requiring Pacific to pay for the Pre–Tender Costs where Pacific would have consented had it been asked. In fact, once Pacific received notice of the employees' claims, Pacific participated in the investigation with Eaton Vance for over a year before deciding that the employees' claims were not covered by the Policy. This court thus sees no reason to depart from the rule that, absent a showing of prejudice, an insurance company is not absolved of its obligation to pay litigation costs merely because of an insured's failure to timely notify the insurance company of the claim.[45] This court held in its August 14 Ruling that Pacific suffered no prejudice through Eaton Vance's delayed notification, and Pacific must therefore reimburse Eaton Vance for the $12,537.00 in Pre–Tender Costs.

## C. *Prejudgment Interest.*

■ Under Massachusetts law, the prevailing party in a contract action is

---

curred prior to notifying the insurance company of the claims).

**41.** *Managed Health Care Sys., Inc. v. St. Paul Fire & Marine Ins. Co.*, No. 98–CV–10831, 2001 U.S. Dist. LEXIS 18302, at *3 (D.Mass. Sept. 28, 2001); *Hoppy's Oil Serv., Inc. v. Ins. Co. of N. Am.*, 783 F.Supp. 1505 (D.Mass. 1992); *Am. Mut. Liab. Ins. Co. v. Beatrice Cos.*, 924 F.Supp. 861 (N.D.Ill.1996).

**42.** *Managed Health Care Systems, Inc.*, 2001 U.S. Dist. LEXIS 18302, at *5.

**43.** *Am. Mut. Liab. Ins. Co.*, 924 F.Supp. at 872.

**44.** *Id.*

**45.** *Johnson Controls, Inc. v. Bowes*, 381 Mass. 278, 409 N.E.2d 185, 187 (1980).

entitled to prejudgment interest at the rate of twelve percent per annum.[46] The prevailing party in a contract action is normally entitled to prejudgment interest because, but for the wrongful conduct of the losing party, the prevailing party would have had the use of that money all along.[47] Even so, a trial court has some discretion to adjust a prejudgment interest award if the prevailing party is in some way responsible for any delay.[48] The trial court also has discretion whether to award prejudgment interest in a Title VII claim.[49] Similarly, in an ERISA case the district court has discretion whether and at what rate to award prejudgment interest.[50] Finally, a trial court may refuse to award prejudgment interest where the damages reflect a disgorgement of profits such that the plaintiff is recovering funds that, in the absence of defendant's wrongdoing, would not have belonged to plaintiff in the first place.[51]

Pacific asks this court to exercise its discretion and deny Eaton Vance's request for prejudgment interest. In the alternative, Pacific argues that the statutory rate of twelve percent is too high, and asks this court to apply the applicable federal statutory rate instead. It is questionable, however, whether it is within the court's discretion to refuse prejudgment interest in this case. The dispute here is based upon the Policy, an insurance contract between the parties. Because the Policy covers a breach of fiduciary duties under ERISA, a portion of the August 14 Ruling was dedicated to determining whether Eaton Vance's failure to fund accounts for certain employees was a breach of their ERISA fiduciary duties. This, however, did not transform the case into an ERISA action. This is consistent with Pacific's own view of the case. In the Complaint, Pacific based this court's subject matter jurisdiction not on ERISA, a federal statute, but on diversity of citizenship.[52]

A federal district court sitting in Massachusetts and presiding over a diversity action should apply Massachusetts law in calculating prejudgment interest.[53] Massachusetts law provides for prejudgment interest in contract actions at the rate of twelve percent per year.[54] This case is not one in which the prevailing party is somehow undeserving of prejudgment interest. First, Pacific has not alleged that Eaton Vance somehow delayed the proceedings in an effort to extract a greater damage award. Second, unlike in *Murray* where the plaintiff's damages constituted disgorgement of the wrongdoer's profits rather than recovery of money that

---

46. M.G.L. ch. 231 § 6C.

47. *See Murray v. Shaw Indus., Inc.*, 990 F.Supp. 46, 48 (D.Mass.1997).

48. *See Foley v. City of Lowell*, 948 F.2d 10, 17–18 (1st Cir.1991).

49. *See Scarfo v. Cabletron Sys., Inc.*, 54 F.3d 931, 961 (1st Cir.1995).

50. *See Cottrill v. Sparrow, Johnson & Ursillo, Inc.*, 100 F.3d 220, 223 (1st Cir.1996).

51. *See Murray*, 990 F.Supp. at 48 (finding that where prevailing party's damage award in an action under the Copyright Act was disgorge-

ment of wrongdoer's profits, prejudgment interest was not warranted because goal of such an award is to compensate the wronged party "for the loss of the use of money that would have been hers but for the wrongful conduct of the defendant").

52. Pl.'s Compl. for Declaratory J. ¶ 4.

53. *See Commercial Union Ins. Co. v. Walbrook Ins. Co.*, 41 F.3d 764, 774 (1st Cir.1994).

54. M.G.L. ch. 231 § 6C; *see also Vickers v. Boston Mut. Life Ins. Co.*, 135 F.3d 179, 182 (1st Cir.1998) ("This being a contract action ... defendant cannot object to interest: it has had the use of promised money.").

belonged to the plaintiff, Eaton Vance would have had the benefit of that money all along, but for Pacific's wrongful refusal to pay. Eaton Vance is therefore entitled to prejudgment interest at the rate of twelve percent per year from the date of breach up to the date of judgment [55] on the $880,869.86 Eaton Vance paid to fund the unfunded employee accounts, as well as on the $12,537.00 in Pre–Tender Costs.

Eaton Vance seeks prejudgment interest on $49,099.50 in Post–Tender Costs that Pacific did not pay until earlier this year. Because the goal of prejudgment interest is to compensate the prevailing party for the loss of use of money that rightfully belonged to it, there is no reason Pacific should be able to avoid prejudgment interest merely by paying the disputed amount before the court issues a judgment as to damages. Eaton Vance is thus entitled to prejudgment interest on the Post–Tender Costs up to the date on which Pacific reimbursed those costs.

Eaton Vance is thus entitled to $148,876.28 in prejudgment interest on the amount it paid to fund unfunded employee accounts, bringing the total for this item to $1,029,746.14.[56] Eaton Vance's award on the Pre–Tender Costs, including prejudgment interest, is $18,324.16.[57] Finally, Eaton Vance is entitled to prejudgment interest on the Post–Tender Costs in the amount of $13,100.57.[58]

### D. *Deposition Transcripts.*

Finally, Eaton Vance seeks reimbursement in the amount of $2,968.07 for deposition transcripts. Rule 54(d) of the Federal Rules of Civil Procedure states that "costs other than attorneys' fees shall be allowed as of course to the prevailing party unless the court otherwise directs . . . ."[59] Congress has statutorily restricted the types of expenses that a court can tax a party.[60] Transcripts are among those expenses for which the statute allows reimbursement. Rule 54(d) operates as a presumption in favor of awarding the prevailing party those enumerated costs, although the rule simultaneously grants the district court discretion to refuse to award such costs.[61] Pacific has alleged nothing that convinces this court that awarding Eaton Vance the costs it seeks is inappropriate. Pacific must, therefore, reimburse Eaton Vance for the $2,968.07 spent on transcripts.

### CONCLUSION

Judgment is hereby entered in favor of Eaton Vance and Pacific is ordered to pay

---

55. The date of judgment is April 30, 2003, the date of this Memorandum and corresponding Order, which is 177 days after November 4, 2002.

56. Prejudgment interest on the $880,869.86 paid to fund the accounts amounted to $97,580.59 as of November 4, 2002, and, at a rate of approximately $289.81 each day thereafter for 177 days, increased by $51,295.69.

57. Prejudgment interest on the Pre–Tender Costs ($12,537.00) was $5,057.09 as of November 4, 2002 and increased by $730.07 for the 177 days thereafter.

58. On November 4, 2002, the accrued interest on the Post–Tender Costs amounted to $11,801.28. Interest accrued each day thereafter by approximately $8.11 per day until January 6, 2003 (63 days = $510.81) and approximately $8.05 per day until February 10, 2003 (98 days = $788.48).

59. Fed. R. Civ. Proc. 54(d)(1).

60. 28 U.S.C. § 1920.

61. *In re Two Appeals Arising Out of San Juan Dupont Plaza Hotel Fire Litig.*, 994 F.2d 956, 963 (1st Cir.1993).

$1,064,138.94 minus $49,000, reflecting the Policy's deductible, or $1,015,138.94.

AN ORDER WILL ISSUE