OKTIBBEHA COUNTY SCHOOL DISTRICT, Dorothy Carlisle, Charlotte Makamson, and All Others Similarly Situated Plaintiffs

v.

COREGIS INSURANCE COMPANY
Defendant

No. 1:99CV328–P–B.

United States District Court,
N.D. Mississippi,
Eastern Division.

Sept. 5, 2001.

**542**

Samuel M. Brand, Jr., Jackson, MS, Jay Taylor Keehley, Starkville, MS, for Plaintiffs.

Louis B. Lancoux, John L. Low, IV, Watkins & Eager, Jackson, MS, Robert S. Marshall, Bollinger, Ruberry & Garvey, Chicago, IL, for Defendant.

## MEMORANDUM OPINION

PEPPER, District Judge.

Presently before the Court are two motions: plaintiffs' motion for summary judgment [7–1] and defendant's motion for summary judgment [12–1]. The Court, having considered the motions, the responses thereto, and the briefs and authorities cited, is prepared to rule. The Court finds as follows, to-wit:

## FACTUAL BACKGROUND

Plaintiffs Dorothy Carlisle and Charlotte Makamson[1] filed a lawsuit (hereinafter the "underlying action") against the Oktibbeha County School District in 1998, alleging that the school district wrongly classified them as exempt under the provisions of the Fair Labor Standards Act of 1938 (hereinafter "FLSA"). 29 U.S.C. § 216(b). According to the plaintiffs, the school board did not pay them for time and a half for all hours worked over forty in a given work week. An agreed order was entered in that lawsuit on September 24, 1999, stating that the plaintiffs were classified as non-exempt within the meaning and purposes of the FLSA. Thus, the plaintiffs, and others similarly situated, were entitled to overtime compensation.

Coregis Insurance Company issued an Educators Legal Liability Insurance Policy to the school district with a policy period of November 9, 1998, until November 9, 1999. On October 27, 1999, the school board, along with Makamson, Carlisle, and others similarly situated, filed the present complaint against Coregis Insurance Company, seeking a declaration that the insurance policy issued to the school district from Coregis indemnified the school district in the underlying action. Coregis strongly asserts that coverage should be denied for the underlying action, based on the language of the policy itself and public policy concerns. Both parties have moved for summary judgment.

## LEGAL ANALYSIS

### A. *No Loss as Defined by the Policy*

 The Coregis policy provides coverages as follows:

> The Company will indemnify the Insureds for Loss as a result of civil Claims made against the Insureds by reason of a Wrongful Act, provided that Claim is first made during the Policy Period and written report of said Claim

---

1. The lawsuit was later amended to include "all others similarly situated."

is received by the Company during the Policy Period or within sixty (60) days thereafter.

According to the policy, a " 'Loss' means Money Damages which the Insured becomes legally obligated to pay by reason of a Wrongful Act ." The policy defines "Wrongful Act" as "any act, error or omission of an Insured constituting a breach of a duty imposed by law or a breach of an Employment Contract."

The Court is of the opinion that the school district has not suffered a loss in accordance with the policy. The school district had a duty to pay overtime compensation because of the statutory requirements of the FSLA, not because of any wrongful act or omission of the school district. The school district had a pre-existing obligation to pay these employees for the overtime hours worked, an obligation that was created by the FLSA.

The policy states that coverage will issue only if the school district suffered a loss by reason of a wrongful act. The duty to pay overtime is a matter of statutory law, and the obligation to pay time and a half for every hour worked over a forty hour week arose when the employees worked overtime hours. The amount owed to these employees is not a loss, but rather it is a pre-existing debt or obligation.

Again, the FLSA created the obligation to pay these employees overtime, not any alleged wrongful act. Therefore, the underlying action does not meet the policy definition of loss, and no coverage exists.

B. *Underlying Lawsuit is Expressly Excluded from Coverage*

█ In any event, section VI of the policy addresses claims that are excluded from the policy. According to Exclusion (A), "any Claim or Loss Arising Out of any Insured gaining profit, remuneration or advantage to which the Insured is not entitled" is specifically excluded from coverage. Clearly, the school district received a benefit when it allowed its employees to work overtime without paying them overtime hours in accordance with the FLSA. The school district gained profit, remuneration, or advantage by having its employees perform overtime work for the district and not paying them one and one-half times their normal rate of pay for work performed in excess of forty hours per week. The district accepted the benefits of the overtime work performed by these employees, and did not pay them for this work. As such, the Court is of the opinion that Exclusion (A) is applicable.

█ Also, Exclusion (B) specifically excludes "any Claim or Loss Arising Out of any criminal, dishonest, malicious, fraudulent or knowingly wrongful act or omission." Clearly, the insurance policy would not cover losses of which the school district knew, planned, or intended. *See Standard Oil Co. v. United States,* 340 U.S. 54, 57–58, 71 S.Ct. 135, 95 L.Ed. 68 (1950). As is evidenced by the complaint of the underlying lawsuit, the school district willfully violated the FLSA, which gave rise to that litigation. Thus, the claims are expressly excluded from coverage.

The school district argues, however, that it negligently violated the FLSA, because the school board apparently misunderstood the act. The district goes on to assert that had the act been properly interpreted, the board would have established a policy in which no employees were allowed to work overtime hours, because the Oktibbeha County School District is one of the poorest in the state and would be unable to pay overtime in accordance with the FLSA. However, this argument in irrelevant in light of the fact that the Court finds that as early as the late 1980's, the school board was repeatedly warned, even by the

United States Department of Labor, that the district must comply with the overtime provisions of the FLSA. Thus, the Court is not convinced that the school district was negligent under the terms of the policy. Furthermore, the Court notes that while the school district now claims that it negligently withheld overtime wages to employees, in the underlying lawsuit, the school district made no claim on the defense of negligence, excusable or otherwise.

### C. Public Policy Considerations

■ The policy states that Loss does not include "matters uninsurable under law or against public policy." Clearly, under the circumstances of this case, to provide coverage for the intentional misconduct of the school district would be contrary to public policy. "It is a central concept of insurance that a single insured will not be allowed, through reckless or intentional acts, to control the risks covered by the policy." *St. Paul Fire & Marine Ins. Co. v. Briggs*, 464 N.W.2d 535, 538 (Minn.Ct.App.1990). Indeed, the Mississippi Supreme Court has also stated that "as a matter of public policy, [the plaintiff] cannot purchase insurance coverage for its intentional, illegal activities." *Delta Pride Catfish, Inc. v. Home Ins. Co.*, 697 So.2d 400, 405 (Miss.1997). The school board intentionally withheld overtime payments from its employees, even after being repeatedly warned that such conduct was in violation of the FLSA. Thus, as a matter of public policy, the Court finds that there is no coverage for the school district's claim.

### CONCLUSION

Based on the foregoing analysis, this Court is of the opinion that the plaintiffs' motion for summary judgment [7–1] should be denied and the defendant's motion for summary judgment [12–1] should be granted. An order will issue accordingly.