**Mark Anthony REID, on behalf of himself and others similarly situated, Plaintiff/Petitioner**

v.

**Christopher DONELAN, Sheriff of Franklin County, et. al., Defendants/Respondents.**

**C.A. No. 13–cv–30125–MAP.**

United States District Court, D. Massachusetts.

Signed March 6, 2014.

---

**84.** *Dulgarian v. Stone*, 420 Mass. 843, 652 N.E.2d 603, 609 (1995) (quoting Restatement (Second) of Torts § 623A (1977)).

**85.** *See* Dolan Aff. [# 23] Ex. G.

Muneer I. Ahmad, Jerome N. Frank, A. Nicole Hallett, Miriam Hinman, Kendall Hoechst, Lunar Mai, Elizabeth Song, Ruth Swift, Michael J. Wishnie, Mary Yanik, Yale Law School, New Haven, CT, Lauren Carasik, Western New England College, School of Law, Springfield, MA, for Plaintiff/Petitioner.

Yamileth G. Davila, Regan Hildebrand, Colin Abbott Kisor, Elianis N. Perez, J. Max Weintraub, U.S. Department of Justice, Office of Immigration Litigation, Washington, DC, Karen L. Goodwin, United States Attorney's Office, Springfield, MA, for Defendants/Respondents.

*MEMORANDUM AND ORDER RE-GARDING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DEFENDANTS' CROSS–MOTION FOR SUMMARY JUDGMENT*

(Dkt. Nos. 1 & 77)

PONSOR, District Judge.

## I. INTRODUCTION

Plaintiff has brought a class action on behalf of all individuals in Massachusetts who are detained pursuant to 8 U.S.C. § 1226(c) for over six months and are not provided an individualized bond hearing. Tangential to that central dispute, Plaintiff has brought a Motion for Summary Judgment, (Dkt. No. 1), solely on his own behalf, seeking a permanent injunction prohibiting Defendants from shackling him during immigration proceedings absent an individualized determination that such restraint is necessary. Defendants have responded with a Cross–Motion for Summary Judgment. (Dkt. No. 77.)

On January 16, 2014, counsel appeared for argument, and the court took under advisement the question of whether a permanent injunction covering shackling of Plaintiff at any future hearings should issue. Though Immigrations & Customs Enforcement (ICE) agreed to conduct an individualized determination of need before shackling Plaintiff at a February 3, 2014, immigration hearing, the parties disputed whether due process permitted ICE, as opposed to an Immigration Judge, to make this assessment.

This decision set forth in this memorandum is not intended to address the issue of shackling as applied to any class of detainee-aliens. Unlike the question of whether detainee aliens are entitled to an individualized bond hearing after six months of detention, the question of shackling is not posed as a class action. Instead, Plaintiff only seeks an order applying to possible future shackling ICE might impose on him.

The court, for the reasons set forth below, will deny Plaintiff's motion for summary judgment and allow Defendants' motion. Although, as a general matter, due process *does* require some type of an individualized assessment before a detained alien may be shackled at a hearing, Plaintiff has obtained the remedy due process mandates. He has also been recently released from custody, (Dkt. No. 98 at 2),

which removes the possibility that he will be subjected to the challenged shackling policy in the future. He therefore cannot establish potential irreparable harm to himself warranting a permanent injunction.

## II. BACKGROUND [1]

This litigation centers on a question of statutory interpretation: does § 1226(c) impose a "reasonableness" limit on the length of time an individual may be detained absent a bond hearing. On January 9, 2014, the court answered that question affirmatively and granted Plaintiff's individual Petition for Habeas Corpus. *Reid v. Donelan*, 991 F.Supp.2d 275, 2014 WL 105026 (D.Mass. Jan. 9, 2014). Following that, on February 10, 2014, the court determined that class treatment was appropriate and allowed Plaintiff's Motion for Class Certification. *Reid v. Donelan*, 297 F.R.D. 185, 2014 WL 545144 (D.Mass. Feb. 10, 2014).

The current motions before the court, as noted above, focus on a peripheral issue: whether Defendants can shackle Plaintiff at immigration hearings without first making a particularized determination that shackling is necessary to ensure courtroom safety. The facts bearing on this separate question are as follows.

Plaintiff's first immigration proceeding occurred at the Hartford, Connecticut, Immigration Court on February 13, 2013. Throughout that entire hearing, Plaintiff was unshackled. On April 5, 2013, the Immigration Judge rejected both of Plaintiff's arguments against deportation and ordered him removed. Plaintiff filed a timely Notice of Appeal with the Board of Immigration Appeals (BIA).

While that appeal with the BIA was pending, Plaintiff filed a motion with the immigration court on June 10, 2013, requesting a bond re-determination hearing. That motion was heard before an Immigration Judge on June 17, 2013. At that hearing, Plaintiff's hands, waist, and feet were shackled. Although Plaintiff's counsel objected to the shackling, ICE asserted that it was solely responsible for determining whether Plaintiff would be restrained and that the Immigration Judge did not have the authority to order the shackles removed. The Immigration Judge agreed with ICE and kept Plaintiff shackled throughout the hearing.

At that time, ICE was relying on a policy adopted in November 2012. It provided for automatic, full restraint of all detainees during immigration proceedings without any individualized assessment of risk, unless the detainee was obviously pregnant, had a physical disability, or had injuries that could be aggravated by standard handcuffing procedures.

As a result of the shackling, Plaintiff experienced a number of serious problems at his hearing. He had difficulty writing notes for himself and to his counsel; he was only able to write one sentence. Plaintiff also had trouble managing his glasses, which counsel had to place on Plaintiff's face and later return to Plaintiff's pocket.

Plaintiff thereafter filed a Motion for Summary Judgment with this court, (Dkt. No. 1), seeking an order precluding such shackling absent an individualized inquiry. Defendants responded with their first Motion to Dismiss. (Dkt. No. 35.) In their view at that time, since Plaintiff had no

---

1. The facts are drawn, unless otherwise noted, from Plaintiff's Statement of Undisputed Facts, (Dkt. No. 7), and Defendants' Cross-

Motion for Summary Judgment, (Dkt. No. 77).

pending immigration hearings, his claim was moot.

On October 23, 2013, the BIA reversed the Immigration Judge's decision and remanded the case for further proceedings relating to Plaintiff's Convention Against Torture (CAT) claim. An evidentiary hearing was scheduled for November 19, 2013. Given the pending date, Plaintiff moved for an emergency hearing in this court seeking a determination on the shackling issue. Defendants, in response, notified the court that they had updated their shackling policy. The new policy, enacted in October 2013, provided for individualized assessments before detainees at immigration hearings would be restrained. These individualized assessments, however, would be conducted by representatives of ICE and not by the Immigration Judge.

The court heard an initial argument on the shackling issue on November 18, 2013. Recognizing that the new policy was an improvement, Plaintiff nevertheless insisted that a neutral arbiter, the Immigration Judge, and not an ICE officer was the proper party to make the individualized assessment to comply with the requirements of due process. Satisfied that Defendants' new policy provided Plaintiff a sufficient individualized determination, at least in the immediate circumstances, the court denied Plaintiff's emergency motion and permitted ICE to make the assessment but reserved the broader issue respecting the constitutionality of Defendants' policy. (Dkt. No. 63.)

At the November 18 hearing, Defendants indicated that they had already conducted the assessment of Plaintiff and concluded that he posed a safety risk.[2] Plaintiff was thus shackled at the Novem-

ber 19 evidentiary proceeding at the immigration court.

On November 27, 2013, Plaintiff filed a Motion to Compel Discovery, (Dkt. No. 71), requesting, among other things, a copy of Defendants' new October 2013 shackling policy. However, on December 6, 2013, the ground shifted once more when Defendants notified the court that they had reverted to their prior, November 2012 policy. According to Defendants, a number of Immigration Judges expressed concerns about the October 2013 policy, and it was therefore placed on hold pending further review. In response, ICE returned to its blanket, national policy of restraining, without any individual assessment of risk, all alien-detainees, with only very narrow exceptions, during immigration hearings.

As a result of this change, Defendants moved to withdraw their prior response and requested additional time to respond to Plaintiff's Motion for Summary Judgment. (Dkt. No. 74.) The court allowed the motion and provided Defendants an additional opportunity to respond.

On January 3, 2014, Defendants filed a Motion to Dismiss on standing grounds and a Cross–Motion for Summary Judgment on the merits. (Dkt. No. 77.) On January 14, 2014, Defendants withdrew the Motion to Dismiss because Plaintiff's individualized bond hearing before an Immigration Judge, as ordered by this court on January 9, 2014, had been scheduled for February 3, 2014.

The court heard argument on the cross-motions for summary judgment on January 16, 2014. Near the end of the hearing, Defendants' counsel represented to the court that, despite the national, blanket

---

**2.** Defendants relied, in part, on Plaintiff's significant criminal history. Since 1986, Plaintiff has been convicted of, *inter alia:* narcotics possession, larceny, a misdemeanor assault, carrying a dangerous weapon, interfering with an officer, failure to appear, driving with a suspended license, selling an illegal drug, and third degree burglary.

policy of shackling, ICE *would* conduct a second individualized analysis to determine whether Plaintiff should be restrained at the February 3, 2014, hearing. As a result of that proffer, the court denied Plaintiff's motion with respect to the upcoming hearing, but took the broader issue of Plaintiff's potential future shackling under advisement.

At the February 3, 2014, hearing, Plaintiff was fully shackled. Nonetheless, the Immigration Judge granted Plaintiff's request for bond and set various conditions of release. (Dkt. No. 91.) Plaintiff has informed the court that he posted bond, and is therefore no longer in custody. (Dkt. No. 98 at 2.)

### III. *DISCUSSION*

Summary judgment is appropriate when there is no genuine issue of material fact, and the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(a). The court must view the facts in the light most favorable to the non-moving party, drawing all reasonable inferences from those facts in that party's favor. *Pac. Ins. Co., Ltd. v. Eaton Vance Mgmt.*, 369 F.3d 584, 588 (1st Cir.2004). In the absence of a dispute over a genuine issue of material fact, summary judgment is appropriate. *Reich v. John Alden Life Ins. Co.*, 126 F.3d 1 (1st Cir.1997).

■ In addition to actual success on the merits, a plaintiff seeking a permanent injunction must establish: (1) irreparable harm; (2) the absence of an adequate remedy at law; (3) a balance of hardship favoring the plaintiff; and (4) an absence of detriment to the public interest. *Esso Standard Oil Co. v. Lopez–Freytes*, 522 F.3d 136, 148 (1st Cir.2008), *citing eBay v. MercExchange, LLC*, 547 U.S. 388, 391, 126 S.Ct. 1837, 164 L.Ed.2d 641 (2006).

### A. *Success on the Merits*

As the ICE policy currently stands, all immigration detainees across the country—except in narrowly defined exceptional cases—are shackled at immigration hearings without any individual assessment of the risk they may pose. Plaintiff contends that this policy violates his constitutional rights and seeks judgment as a matter of law. (Dkt. No. 1.) He requests a permanent injunction "ordering Defendants to unshackle him during future proceedings in immigration court, absent a constitutionally adequate individualized finding of dangerousness." (Dkt. No. 82 at 14–15.)

■ Though the parties spend significant effort disputing the constitutionality of Defendants' broad policy, Plaintiff only seeks *individual* relief. As such, the question before the court is solely whether Defendants' policy, *as applied to Plaintiff,* is unconstitutional. To succeed on such a claim on procedural due process grounds, a plaintiff "must identify a protected liberty or property interest and allege that the defendants, acting under color of state law, deprived [him] of that interest without constitutionally adequate process." *Gonzalez–Droz v. Gonzalez–Colon,* 660 F.3d 1, 13 (1st Cir.2011), *citing Aponte–Torres v. Univ. of P.R.,* 445 F.3d 50, 56 (1st Cir. 2006). To determine what constitutes "adequate" process, Plaintiff contends that the court should employ the balancing test provided in *Mathews v. Eldridge.* 424 U.S. 319, 335, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976).

Defendants dispute that the *Mathews* formulation applies in the immigration context. Instead, Defendants, citing *Saakian v. I.N.S.,* 252 F.3d 21, 24–25 (1st Cir.2001), argue that Plaintiff can only bring a due process claim if he can establish prejudice by pointing to some way in which the *outcome* of his immigration proceedings

was affected by the shackling. Since the first incident of shackling did not occur until after the Immigration Judge made his initial decision to order Plaintiff removed, Defendants contend, it is impossible for Plaintiff to demonstrate prejudice.

Defendants' contention fails to distinguish between a challenge to the outcome of an immigration hearing and a preemptive objection to a procedure before the hearing takes place. Indeed, the *Saakian* case and the cases it relies on all unfold in the same context: a petitioner argues that a due process violation negatively affected his or her immigration case. *Saakian*, 252 F.3d at 24–25 (arguing that the failure of the Immigration Judge to reopen his case to argue ineffective assistance of counsel was a due process violation); *see also Hernandez v. Reno*, 238 F.3d 50 (1st Cir.2001) (arguing that the ineffective assistance of counsel prejudiced plaintiff's immigration case); *Bernal–Vallejo v. INS*, 195 F.3d 56 (1st Cir.1999) (same). The prejudice requirement, like the harmless error doctrine often applied in criminal appeals, makes sense in that context: It prevents the needless remanding of a case that will be resolved identically even when the procedural infirmity is remedied.

Plaintiff's complaint here is of a different nature. Plaintiff is not arguing in this forum that the Immigration Judge's decision respecting removal was incorrect.[3] He is certainly not contending that the shackling led to the removal decision. He does not even argue that shackling itself was per se unconstitutional. Plaintiff merely maintains that the restraint imposed by shackling infringes on his liberty interest and that the government may only curtail such a right after enacting appropriate safeguards. As another court has aptly said with regard to an identical challenge, "The premise that a due process

violation is not grounds for *reversal* absent a showing of that degree of prejudice has no bearing on a plaintiff's right to seek to enjoin due process violations from occurring in the first instance." *De Abadia–Peixoto v. U.S. Dep't of Homeland Sec.,* 277 F.R.D. 572, 575 (N.D.Cal.2011)(emphasis in original).

█ In sum, it makes little sense to apply the prejudice requirement as framed by Defendants, and, moreover, the case law cited by Defendants is distinguishable. The court's analysis will therefore proceed along the familiar lines established in *Mathews*. This approach requires the court to balance the individual's interests, the risk of an erroneous deprivation of those interests, and the government's interests. *Mathews*, 424 U.S. at 335, 96 S.Ct. 893.

### 1. *Plaintiff's Interests*

Plaintiff's interests have been identified, at least to an extent, in Supreme Court precedent addressing shackling in the criminal context. *Deck v. Mo.*, 544 U.S. 622, 125 S.Ct. 2007, 161 L.Ed.2d 953 (2005). Though the *Deck* case does not imbricate perfectly with the pending dispute, it does provide guidance. In that case, the Supreme Court justified a presumption against shackling a defendant in front of a jury in the criminal context for three primary reasons. *Id.* at 630–31, 125 S.Ct. 2007. First, shackling undermined the presumption of innocence as it "suggests to the jury that the justice system itself sees a need to separate a defendant from the community at large." *Id.* at 631, 125 S.Ct. 2007 (internal quotation marks and citations omitted). Second, it diminished the defendant's right to counsel since shackles "can interfere with a defendant's ability to participate in his own defense,

---

**3.** The Immigration Judge's order to remove Plaintiff is currently before the BIA.

say, by freely choosing whether to take the witness stand on his own behalf." *Id.* Finally, shackling undermined the judicial objective of preserving the dignified and respectful treatment of defendants. *Id.*

The factor most clearly present in the immigration context, and the one bearing most heavily in Plaintiff's favor, is the detainee's interest in the preservation of his or her dignity.[4] The presumption against shackling has its roots in the common law, where one of the primary justifications for eschewing mandatory shackling was respect for the humanity of every individual. *See, People v. Harrington,* 42 Cal. 165, 167–68 (1871); *see also Illinois v. Allen,* 397 U.S. 337, 344, 90 S.Ct. 1057, 25 L.Ed.2d 353 (1970) ("[N]o person should be tried while shackled . . . except as a last resort."); *U.S. v. Brantley,* 342 Fed.Appx. 762, 770 (3d Cir.2009) ("A declaration of "no unfair prejudice" . . . cannot cure the injury that results to the decorum of the courtroom or the dignity of the individual if restraints are not actually necessary."); Joan M. Kauskopf, *Physical Restraint of the Defendant in the Courtroom,* 15 St. Louis U.L.J. 351, 351–54 (1970–71).

It cannot seriously be argued that a detainee such as Plaintiff has any diminished dignity interest at an immigration proceeding. It is just as dehumanizing—and, no doubt, demoralizing—to shackle a detainee in an immigration court as it would be to shackle him in a criminal court. To deny or minimize an individual's dignity in an immigration proceeding, or to treat this essential attribute of human worth as anything less than fundamental simply because an immigration proceeding is titularly civil, would be an affront to due process and entirely inconsistent with the values underlying *Deck.*

In reaching this conclusion, the court is not suggesting that no one may ever be shackled. Under appropriate circumstances, an individual may, in fact, be shackled, even in a criminal courtroom in the presence of a jury and, of course, also in an immigration proceeding. Recognition of the dignity interest at play in the shackling decision merely means that this very important consideration must be balanced against the remaining *Mathews* factors to determine whether automatic shackling, absent an individualized determination, violates Plaintiff's right to due process and warrants correction.

2. *Government's Interests*

Balanced against Plaintiff's dignity interest is the government's compelling interest in courtroom safety. The *Deck* court explicitly recognized that courtroom security constituted an "essential state interest." *Deck,* 544 U.S. at 629, 125 S.Ct. 2007.

The government has provided examples of some of the unique safety concerns present at the immigration court in Hartford, Connecticut, where the proceedings related to Plaintiff were conducted. These include: limited officers on the floor where the immigration court is located; the logistical requirements of escorting detainees through multiple floors and public hallways; public waiting areas the detainees are escorted through; the different stationing of officers creating potential difficulties in responding to an emergency; and the public nature of the immigration proceedings. (McCaffrey Decl., Dkt. No. 77, Ex. 1.) Particularly notable is that the

4. The second reason provided by the Supreme Court—an individual's ability to assist his or her counsel—is also implicated here. As evidenced by Plaintiff's inability to take notes during his immigration proceeding, restraints can restrict an individual's practical ability to work with his or her attorney. This interest, however, though more than minimal, is insubstantial in comparison with Plaintiff's dignity interest.

Immigration Judges in Hartford themselves requested that ICE place its modified 2013 policy of individualized determinations on hold because of safety concerns they had. (Tr. of Mot. Hr'g at p. 11, Dkt. No. 88.)("[T]here was a decision made to withdraw that [November 2013] policy because concerns were made by immigration judges about the implementation.") Viewed collectively, Defendants point out, legitimate safety risks are present in the Hartford facility and must be taken into account.

The court respects these concerns. It is sometimes very hard to gauge potential risk, and serious problems, even violence, can erupt suddenly and without warning from a seemingly low-risk case. These safety considerations, however, do not provide Defendants unlimited authority, nor do they justify ignoring Plaintiff's dignity interest. As the *Deck* court emphasized, these concerns about potential risk necessarily require "individualized security determinations." *Deck*, 544 U.S. at 632, 125 S.Ct. 2007. Balanced against one another, *some* type of individual determination is essential to avoid any unnecessary infringement of Plaintiff's dignity interest while still protecting the public's safety. The form of such an individual assessment, as applied to this Plaintiff, becomes clear after examining the final *Mathews* factor.[5]

### 3. *Alternate Procedures and Risk to Plaintiff*

The final factor requires the court to balance the additional procedures requested and the risk, absent such safeguards, of an erroneous deprivation of a detainee's due process interest. Plaintiff contends that due process demands that an independent Immigration Judge conduct the individualized determination. Defendants maintain their position that no individualized assessment is necessary, whether conducted by an Immigration Judge, ICE, or anyone else.

The facts of this specific case present difficulties for Plaintiff. He has a significant criminal history, including convictions for violent offenses and even for interference with an officer. Defendants have also pointed to disturbing behavior on Plaintiff's part during his detention, including fighting with other inmates.

Plaintiff for his part points to his good behavior during his initial immigration hearings. At those proceedings, he was unshackled and yet no security issue arose. Those hearings, he contends, establish his ability to maintain decorum absent any restraints.

Based on these conflicting arguments, the determination of whether Plaintiff's shackling is required to ensure public safety is a question over which reasonable minds could disagree. This court does not fault the recent decision by ICE, after an individual assessment, that restraint was required at Plaintiff's February 3, 2014 hearing.

The problem is that under the current blanket policy, no question exists—Plaintiff would always be restrained. Although the risk of erroneous deprivation may be less troubling in this case than in others, it is still present. Through an individualized assessment, a reasonable person, given Plaintiff's prior comportment at immigration court, could conclude that Plaintiff did

---

**5.** The proper balance between a plaintiff's dignity interest and security concerns was intelligently addressed in the settlement agreement in *Abadia–Peixoto v. U.S. Dep't of Homeland Sec.*, 277 F.R.D. 572 (N.D.Cal. 2011). That agreement contemplates an individual assessment prior to shackling during immigration hearings for all detainees at the San Francisco Immigration Court. (Dkt. No. 90.) This settlement agreement illustrates the plausibility of balancing security interests while still respecting an individual's dignity.

not need to be shackled. This risk, coupled with Plaintiff's dignity interest, justifies *some* form of individual assessment on any future hearing.

The question then becomes whether ICE's individual analysis respecting Plaintiff is constitutionally sufficient, or whether an Immigration Judge, and not ICE, must consider any risk that Plaintiff may pose at a future hearing. On the facts before the court, the likelihood that ICE would decide that Plaintiff should be shackled while the Immigration Judge would conclude otherwise is negligible. In other words, if ICE determined that shackling were appropriate, it is extraordinarily unlikely that an Immigration Judge, given Plaintiff's extensive criminal history, would reject or overrule that recommendation. This is particularly true since it was Immigration Judges themselves, or at least some of them, who expressed concern about the October 2013 individualized policy. Although an impartial decision-maker may be necessary in some cases as an element of due process, the court cannot conceive of circumstances under which an Immigration Judge, in *this* case, would disregard ICE's opinion. An independent decision by the Immigration Judge may be advisable but is not constitutionally required as regards to this Plaintiff.[6]

 After balancing all of the *Mathews* factors, the court must conclude that an individual assessment is required before a detainee may be shackled during immigration proceedings. Plaintiff's strong dignity interest and the risk of erroneous deprivation of his due process rights make this determination inevitable.

However, when compared with ICE's significant safety concerns, and the fact that ICE and the Immigration Judge would undoubtedly arrive at the same conclusion in this case, Plaintiff's due process rights are satisfied when this individual assessment is made by ICE.

## B. *Irreparable Harm*

 In addition to examining the merits, the court must look carefully at the issue of potential irreparable harm to determine whether issuance of a permanent injunction is appropriate. *Ross–Simons of Warwick, Inc. v. Baccarat, Inc.*, 217 F.3d 8, 13 (1st Cir.2000) ("Irreparable harm is an essential prerequisite for a grant of injunctive relief.") (citation omitted). Although, as the discussion above makes clear, the possibility that Plaintiff may be shackled without any individual assessment of risk does raise substantial due process concerns, the absence of any irreparable harm here is fatal to his request for a permanent injunction.

The key, obvious consideration is that Plaintiff has already received the remedy that the court has found due process requires on the facts of this case. ICE, for the November 2013 and February 2014 hearings, conducted an individual analysis of Plaintiff, and it determined that shackling was necessary. Plaintiff cannot show *any* harm, let alone irreparable harm, when an injunction would merely order a remedy Plaintiff has already obtained.

Furthermore, Plaintiff cannot show any risk of a concrete, future injury subjecting him to irreparable harm. *See Charlesbank Equity Fund II v. Blinds To Go, Inc.*, 370

---

**6.** This conclusion is limited *solely* to this Plaintiff. Although the court believes, based on a number of individual factors discussed, that the distinction between an assessment conducted by an Immigration Judge and ICE in this instance is meaningless, the decision may not be applicable to other detainees. There may well be a case where due process requires that the shackling assessment be made by the independent judicial officer, the Immigration Judge, and not by ICE.

F.3d 151, 162 (1st Cir.2004). No immigration hearing is pending, nor is it inevitable that Plaintiff will ever be in immigration court again. More importantly, now that Plaintiff has been released on bail, he is no longer part of the class of detainee-aliens subject to Defendant's blanket shackling policy. In this context, Plaintiff simply cannot demonstrate that, absent court action, he will suffer irreparable harm.[7] *Id.*

## IV. *CONCLUSION*

In general, due process requires an individualized assessment of the risk posed by an alien detainee before he or she may be shackled during an immigration proceeding. Given the facts of record, it is not necessary for the court to address the question of whether this assessment must always be made by an Immigration Judge rather than an ICE official. The fact that the evaluation was made by an ICE official in this case does not entitle Plaintiff to permanent injunctive relief, since ICE's individual assessment was enough, here, to satisfy due process.

The coup de grâce to any claim for permanent injunctive relief for Plaintiff on the shackling issue is the recently emerged fact that he is no longer detained and therefore faces no future risk of shackling under the challenged policy.

Thus, since Plaintiff cannot show irreparable harm absent a permanent injunction, Plaintiff's *Motion for Summary Judgment* on the shackling issue (Dkt. No. 1) is hereby DENIED, and Defendants' Cross-Motion for Summary Judgment on this issue (Dkt. No. 77) is hereby ALLOWED.

7. The court has not addressed the two remaining equitable factors—balance of harm and public interest—since the absence of irreparable harm eliminates any justification for a permanent injunction.

The case will continue on the broader issue relating to individual bond hearings that are defined in the class certification.

It is So Ordered.